### WYLIE HILLIS v. THE STATE.

#### No. 3124. Decided May 6, 1914.

**1.—Murder—Charge of Court—Trespass—Self-defense.**

Where, upon trial of murder and a conviction of manslaughter, defendant's theory of defense was that he had a right to go upon the premises where the difficulty occurred, on the ground that he had rented the land to the deceased and that under the contract he had the right to enter the premises and work out the crop for the mutual benefit of himself and the deceased, and the evidence raised this issue of defense, the court should have submitted this theory and his charge that defendant had no right to forcibly go on the land and premises to work and cultivate the crop, etc., was not applicable to the facts and was reversible error.

**2.—Same—Evidence—Intent.**

Where, upon trial of murder, the State claimed that the defendant was a trespasser at the time he entered the premises where the homicide occurred, and the defendant claimed that under the terms of the contract with deceased he had a right to go there and work the crop, the court should have permitted him to show that he had told the justice of the peace who had advised him that, under the circumstances, he had a right to go upon the ground and work the crop.

**3.—Same—Evidence—Condition of Crop—Contract.**

Where, upon trial of murder, the defendant claimed that he had a contract with deceased to work the crop in case the deceased failed to do so, he should have been permitted to show the condition of said crop and that his going upon said land was authorized.

Appeal from the District Court of Bowie. Tried below before the Hon. H. F. O'Neal.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*R. H. Jones* and *R. D. Hart,* for appellant.—On question of court's charge: Dent v. State, 46 Texas Crim. Rep., 166; Smith v. State, 57 Texas Crim. Rep., 455, 123 S. W. Rep., 698.

On question of court's charge on rent contract: Smith v. State, supra, and cases cited in opinion; Crowson v. State, 51 Texas Crim. Rep., 12; McMillan v. State, 58 Texas Crim. Rep., 525, 126 S. W. Rep., 875.

*C. E. Lane,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—On an indictment charging murder, appellant was convicted of manslaughter and his punishment assessed at three years in the penitentiary.

The material facts are practically undisputed. They show that appellant, Hillis, rented to Anias Griffin from twelve to eighteen acres of land for the year 1913. Griffin was to pay one-third of the corn and one-fourth of the cotton as rent. Appellant testified, and Griffin did not deny it, that Griffin first applied to appellant to rent the land for his, Griffin's, brother. Appellant declined to rent to Griffin's brother and upon further negotiations to rent it himself appellant said he knew Griffin had a hired hand and he asked him in case the hired hand quit, would he work the crop on his land anyway, and Griffin told him he would; that if he rented it he would work appellant's land if he had to let the other that he had lie out and that he thereupon rented him the land under said agreement. Griffin planted some seven acres of the land in cotton in the early part of April, 1913, but failed to work it at all. He also failed to plant several acres of it in cotton until the last of May. On May 23rd, appellant saw him and he then promised that on the following Monday he would work out the seven acres of cotton. On that day Griffin and his hired hand plowed two furrows only in this

cotton, then loaded up their plows and carried them away. About 12 o'clock that day appellant went to see him again and asked him how come him to quit working that cotton and he said it was so rough he couldn't plow it. He asked him then what he was going to do with it and he said he didn't know; that he thought maybe he had better hoe it before he tried to plow it, but that he didn't know when he would do that,—not that week anyhow; that he had other work to do and didn't know when he would get to that. Appellant then offered to work the cotton out for him and let him pay him for working it that fall when he gathered his crop; or, if he would hire anybody else he would advance him the money to pay for it and wait till the fall for his money. Griffin refused to give him any satisfaction and would not say what he would or would not do. Appellant then went to town to see what he could do,—whether he could work the crop or have it worked, or what to do with it. He went to the justice of the peace and talked to the justice of the peace. The court, on the State's objection, refused to let appellant tell what the justice of the peace advised him about it. Appellant then went back to work in that seven acres on Tuesday morning which was May 27th. He worked therein until the afternoon Thursday. Thursday afternoon Griffin and his brother-in-law, Hill, came down to where he was and saw him about going to work again in that cotton and, learning from him that he was going to continue his work, Griffin refused to let him do it, warned him not to do it and ordered him away. Appellant refused to go, claiming that he had a right to work the crop for their mutual benefit. Griffin thereupon got a club and with his brother-in-law threatened to beat him up with it and ran him out of the field and forbade him to come back therein. Appellant swore that Griffin then said to him, "I am not going to work it, and you damned son-of-bitch, you are not going to work it." Appellant then asked him to go to town with him and he would prove to him he had a right to work it and Griffin replied that he made his own law and refused to go with him to town or see anything further about it. Appellant borrowed a gun, took it with him and he and his wife went down in the same cotton field and went to work therein the next morning. He also hired Mr. Stout and Mr. Stout's daughter to work with him in that cotton. He testified he carried the gun to the field with him to protect himself and prevent his being run out of the field by Griffin. After appellant and his wife and Mr. Stout and his daughter had been at work some time in this cotton, the deceased, Mr. Barlow, and Griffin came into the field. Barlow and Griffin saw appellant and said parties with him in the field and as soon as he got in halloing distance, he halloed, "Hey! hey! get out of there, you damned sons-of-bitches, I will kill every one of you." This seems to have been repeated. Barlow had a gun with him, holding it in his hands somewhat presented. He and Griffin kept approaching appellant in that attitude. When they got in seventy-five or eighty yards Mr. Stout told appellant not to do anything; that he would go and stop them. He attempted to do so. As soon as Barlow recognized Stout he apologized to Stout and

said to him, pointing to appellant, "There is the damn son-of-a-bitch I am after," and continued approaching until he got fifteen or twenty steps from appellant. Appellant in the meantime had gotten back by a tree against which his gun was leaning and picked up the gun and got behind, or attempted to get behind the tree. Barlow said, "Look out everybody," threw his gun to his shoulder and fired at appellant. His gun was loaded with buckshot. Some of the shot struck the tree about even with appellant's head. Appellant was not struck. When Barlow said, pointing to appellant, "There is the damn son-of-a-bitch I am after," and "Look out everybody, God damn you," threw his gun to his shoulder, appellant then leveled his gun at deceased and they both shot almost simultaneously. Some of the witnesses said deceased, Barlow, shot first. One of them thought appellant shot first, but the effect of the testimony of all is that the shots were almost simultaneously, whichever one shot first. Appellant's gun was loaded with squirrel shot,—small shot. Several of them struck deceased about the breast and face. One only went into his eye and thence into his brain which killed him. The others would not have killed him.

Appellant has many objections, timely and properly made, to the charge of the court. The case seems to have been tried under the theory that appellant had no right whatever to work this crop or to go on the land for that purpose. Among other things, the court charged the jury:

"Under the undisputed facts in this case you are instructed that the defendant had no right to forcibly go on the land and premises for the year 1913, and to work and cultivate the cotton thereon situated over the protest and against the consent of the said Griffin." In our opinion the case was tried on the wrong theory, and this charge was erroneous.

The appellant contended and his evidence tended to show, if it did not show, that Griffin, in fact, had abandoned the cultivation of the crop, and under the terms of their contract appellant would not have been a trespasser if, as contended by him and testified by him, he went upon the land to work out the crop for the mutual benefit of both of them and not for the purpose of taking the crop away from Griffin. Besides this, the court in his charge, seemed to treat the facts as if Griffin was in actual possession of the field at the time and appellant was forcibly attempting to take possession thereof and eject Griffin. The evidence does not establish any such state of facts. It shows that appellant, under the claim of right, had gotten actual possession of this field and was working it out for his own and Griffin's benefit, and that Griffin and Barlow,—his uncle, the deceased,—were themselves, attempting to forcibly put appellant out of possession and to actually kill him because he was in possession, and, under the facts, to entirely deprive appellant of the right to defend his very life, which is not the law applicable to this case at all. The case should have been submitted, by the charge of the court, under appellant's theory and testimony, as well as that of the State, and under the appellant's theory and his testimony he had the right to go upon said land and work out said crop for the mutual benefit

of himself and Griffin. Bettie v. Key, 128 S. W. Rep., 1160; see, also, Rogers v. Frazier Bros., 108 S. W. Rep., 727.

Appellant has some bills of exceptions to the exclusion by the court of some of his testimony. The State objects to the consideration of these bills because they are wholly insufficient. The State's contention, we think, is perhaps correct, but in view of the fact that the case must be reversed, it is necessary to pass upon some of these questions, in view of another trial.

A material question was as to the intent of appellant in going upon the land and cultivating this cotton crop. The State's theory was that he was a trespasser, without any rights on the property; that he went there armed with a gun and was going thereon and working the crop against the will of Griffin and against his positive orders, and that his object and purpose was to provoke a difficulty and get an opportunity to kill Griffin, or anyone who attempted to assist him. His contention was that he had no such intent, but that under the terms of the contract he had a right to go there and work the crop; that Griffin had failed and refused to do so, and, in effect, had abandoned the crop and that he took his gun with him solely to protect himself. Under such circumstances, it was very material for appellant to show, and he had the right to show that before he went on the land to work the crop, he had advised with the justice of the peace and if the justice of the peace had advised him, that under the circumstances he had a right to go upon the ground and work the crop, he was entitled to make such proof; and the court erred in not permitting him to show that he had advised with the justice of the peace and that the justice of the peace, if he did so, advised him that he had a right to go upon the land and work the crop.

We are also of the opinion that the court erred in excluding all testimony as to the condition of the crop, under the circumstances of this case. In our opinion that was a material inquiry and appellant was entitled to the evidence to show the condition of the crop, in view of the lateness of the season, so that the jury could determine under appellant's theory and testimony, whether Griffin had in fact abandoned or neglected the crop so as to practically amount to the same thing, and under the terms of the contract, to go upon the land and work the land for his own protection and benefit.

There are other complaints to several portions of the court's charge some of which we think are well taken. We deem it unnecessary to discuss them in view of what we have said about the case above. Doubtless, upon another trial, the case will be tried upon the right theory and the charge of the court will be so drawn as that the present objections thereto will not be applicable.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*